# The Washington Post

1150 15th STREET, N.W
WASHINGTON, D.C. 20071
(202) 334-6000

JAMES A. McLAUGHLIN
ASSOCIATE COUNSEL
(202) 334-7988

**FILED**

OCT 13 2009

Clerk, U.S. District and
Bankruptcy Courts

October 13, 2009

**By Fax (202-354-3392) and E-mail (ricardo_m._urbina@dcd.uscourts.gov)**

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Ave., N.W.
Washington, D.C. 20001

Re:   **United States v. Paul Alvin Slough, et al.
      Cr. No. 08-360(RMU)**

Dear Judge Urbina:

     We understand that the Court will hear The Washington Post's objection to closing the courtroom for tomorrow's *Kastigar* hearing at 9:45 a.m. tomorrow, in advance of the 10:00 hearing. We appreciate this opportunity to be heard, and we respectfully submit this letter to frame the issue in advance.

     Our objections are both procedural and substantive. First, we are troubled that tomorrow's hearing appears not to have been listed on the public docket; nor was there any indication of submissions by the parties relating to the proceeding. If a *Washington Post* reporter had not learned of the hearing by happenstance, it likely would have occurred without the public's knowledge. In very rare circumstances, it may be appropriate in a criminal case to exclude the public from a hearing or allow pleadings to be filed under seal. But so-called "secret dockets" are universally acknowledged to be improper, because they preclude the public from any meaningful exercise of its constitutional and common-law rights of access to judicial proceedings. We request that the Court not tolerate any further secret activity in this case. If the Court determines, after appropriate fact-finding and consideration of objections and alternative approaches, that a particular hearing should be closed or that pleadings be filed under seal, the docket should still reflect such activity.

     It also appears that there has been no order entered to support the exclusion of the press and public from this hearing, let alone the "specific, on-the-record findings" required by the U.S. Supreme Court to justify the closure of criminal pretrial proceedings. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986). At this point, we are aware only of a Stipulated Protective Order, dated May 12, 2009, that applies by its own terms to "discovery materials" (not the closure of courtroom proceedings) and, in any event, does not set forth grounds that would come close to overcoming the public's First Amendment right of access to criminal proceedings.

Letter to the Honorable Ricardo M. Urbina, U.S.D.J.
October 13, 2009

Because there is no order, our understanding of the Court's basis for closing the hearing is limited to two telephone conversations between a *Washington Post* reporter and one of your law clerks. We are reluctant to jump to any conclusions about the Court's views on that basis. For what it is worth, however, the grounds for closure cited by the law clerk in those conversations – namely, concern about the impact of pretrial publicity on potential jurors and witnesses – appear to be speculative and insufficient. It is well established that *voir dire* is the preferred means for resolving concerns about the impact of publicity on the jury pool, rather than closing proceedings. *See, e.g., In re Charlotte Observer*, 882 F.2d 850, 855 (4th Cir. 1989) (holding that the district court's exclusion of the press from a pretrial hearing on the ground that publicity could taint the jury pool "gave much too short shrift to the capability of jury voir dire to guard against the potential prejudice of pretrial publicity"). There is simply no reason to think that *voir dire* cannot safeguard the interests of picking a fair jury in this case. Though this is a high-profile and newsworthy prosecution, it certainly will not cause any more pretrial publicity (in fact, much less) than many other criminal prosecutions in which an impartial jury was ultimately selected.

As for the impact of pretrial publicity on witnesses, that too appears to be a highly speculative reason for closure. We see no reason why permitting coverage of tomorrow's hearing would pose a greater risk of tainting witnesses than other *Kastigar* hearings (which have been open to the public, in our experience). Our criminal justice system imposes numerous safeguards to ensure reliable and truthful witness testimony. Among other things, witnesses are placed under oath and face the risk of perjury charges; they can be impeached with documents and prior statements; and they are subjected to cross-examination. In light of these protections, it is dubious to assume that news coverage of a pretrial hearing will skew witness testimony. At a minimum, such a determination cannot be made in the absence of concrete findings that are specific to the facts of this case, which would permit objection and possibly appellate review. *See Press-Enterprise*, 478 U.S. at 14 (holding that pretrial criminal proceedings "cannot be closed unless specific, on-the-record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest"). The Court must also determine that "reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Id.*

For these reasons, we believe that closure of the courtroom for tomorrow's hearing would be an unjustifiable infringement of the public's First Amendment rights. We appreciate the Court's consideration of this matter.

Sincerely,

James A. McLaughlin
Associate Counsel
The Washington Post